a series of related case somewhat related cases and we'll start that journey with Pilz v. Inslee case number 22-35508 Good morning Your Honor. I apologize for the cough drop. I'm a bit under the weather. Not COVID, thankfully though. Should have worn a mask. Your Honor, the case here involves... You want to tell us who you are? Of course, Your Honor. Nathan J. Arnold and Jacobowitz on behalf of the appellants. The case here involves the governor of the state of Washington acting without his authority from the legislature and greatly expanding his emergency powers and indeed acting within a field that was already occupied by our state legislature. Do you think that's your strongest argument then? Your Honor, I'm conflicted on that point. I erred in not applying strict scrutiny to the religious freedom question as well. Can I ask about... I don't mean to deter you from what you you perceive to be your strongest argument. The free exercise one I'm interested in and but I don't understand how you do get out of rational basis. As I understand it, the record in this case is that you know the vast majority like 90% of the religious exemptions sought were granted. Do you disagree with that? I don't disagree with that statistic but I don't think that's the dispositive question, Your Honor. The more important question is did the proclamation on its face set up a mechanism for the governor... for government, that is the individual agencies, the employers, to pick winners or losers? And we see from Supreme Court precedent when a law or... So your position is the minute that there that there's just unfettered discretion to grant these exemptions even if they're all granted it's a it's it's a subject to strict scrutiny at that point? Yes, Your Honor, I believe that is the case. When a system is set up where there is and to quote the language from the case law mechanism for individualized exemptions then strict scrutiny does apply. I was unclear so who is this did any of the plaintiffs actually seek a religious exemption? Yes, Your Honor, they did. And they were all denied or they were... The bulk of them were granted. Do you have a plaintiff who sought a religious exemption and it was denied? Your Honor, I would have to go back and look at the pleadings. I don't off the top of my head have the answer to that. I'm sorry. If every one of your plaintiffs who had a religious objection got an exemption I don't see how they're challenged on religious freedom grounds. I don't understand that. Well, there's a two-part system here of course. There's first the individual employee seeks an exemption. That itself triggers a strict scrutiny where the government then has the ability to pick winners and losers so to speak. There's the individualized mechanism. But they picked your clients as winners so I don't understand. I mean you you think that you just still have standing to say well we shouldn't had to go through the exemption process at all? I do think that is correct, Your Honor. And the more important thing is there's the second step that is intertwined in this specific case because after the exemption is granted then there is an accommodation process or a so-called accommodation process. Now with some non-governmental... They were still required and I'm sorry we have so many cases I can't remember. This is a mask case or is this a vaccination case? This is a vaccination case. So the reason it's important to look at both steps is an exemption without a legitimate accommodation process is a sham exemption. So we see in... But I don't understand they didn't have to get the vaccination, right? No, they absolutely did or lose their jobs. Even... Then what was the religious... I'm... Exactly. No, no you're actually right on point here, Your Honor. My clients who received exemptions still had to receive the vaccine or lose their jobs. The exemptions were pointless. There is a two-step process. First, are you quote-unquote exempt? Are you... Is your religious belief acceptable to the agency? So that's our first problem, the government's judging a religious belief. Then the second step was can we Now these clients, my clients, were not accommodated despite their religious beliefs. They still lost their jobs. Were there reasons given for that? So the stat that I gave of what... What is it? 711 religious exemptions sought and 26 were denied. So it's really more like 95% were granted. But your point is the vast majority of that, you know, 750 still had to get the... Correct. Or lose their jobs. And so, Your Honor, these things are intertwined. These exemptions were pointless without accommodation. If this were a case where the proclamation said or actually it worked out this way, that once you are exempt... You didn't have to get the vaccine. We would not be here this morning. Got it. So what happens... What's the effect of the exemption? The effect of the exemption, it is a gatekeeping process to then get to the quote-unquote accommodation stage, which, based on our pleadings and the data that we've looked at and our client's stories, was a sham. But what was the accommodation... Was there an accommodation requested and refused? And what is that? There were many accommodations requested and refused, Your Some of the clients asked for testing. Some of the clients brought to the attention of their employers that they had already had COVID and therefore had natural immunity. But across the board with this group of plaintiffs, they were denied. Now, we see in some health care... So wait, the state asked them to wear a mask and that was an accommodation they wouldn't accept? No, absolutely not, Your Honor. If the state had said, wear a mask and keep your job, we probably also wouldn't be here this morning. All of those accommodations were refused. So, or if the state had said, you can test once a week, the bulk of my clients would have, or probably all of them, would have taken it, we're probably not here this morning. So no accommodations were offered. That's the problem. The state acknowledged... No accommodation from dismissal? Correct. It was back across the board. Now, there were... Very interested to hear from the government on this, because the way you're now... And there's interesting contrast to, Your Honor. There were... So this mandate applied to state workers, also applied to health care workers. Can we talk about the issue of mootness? Because, I mean, the order has been rescinded. So what relief are you seeking that would still be live? Reinstatement. So, Your Honor, what should have happened here? Well, in the first instance, there should have been a proper accommodation process, because an exemption without accommodation is not an exemption. So we did seek damages as well. But when the... Damages run into 11th Amendment issues, depending on how the claims are construed. I would agree with that, as far as how the claims are construed. There are also federal questions here as well. There are state questions as well. Going back to the mootness point, though, Your Honor, what should have happened here, under Loudermill and other cases, is my client should have been suspended, if anything. Now, what really should have happened is there should have been a true accommodation process, which did not occur. And certainly, we're under Rule 12 here, and our position is that did not occur. Did your client seek reinstatement when the directive was rescinded? Some have, some have not. Some had to move out of state and just had too much uncertainty in their lives, had to move to Idaho or were they granted? Your Honor, that's not in our record. Is that not part of the record? That is not part of our record, because that was lifted after this, after we were quite far down the road. But what should have happened, first, in the first instance, we should have had a true accommodation process, which we did not. And if anything, either vaccine or lose your job really should have been, under Loudermill, should have been vaccine and emergency, then they're dropped back into their job and carry on with life. But that's not what happened. My clients are still out of their jobs, the vast majority at least, or some have moved on. They've all lost valuable pension rights. And even those who were not, even those who sought reinstatement and were rehired, were not rehired to the same position. Again, this is in their record, Your Honor, but not rehired at the same position. I do, Your Honor. I just wanted to answer your question. I understand. And I would like to reserve some of my time, Your Honor, of course, if you have any other questions, but I do want to point out one thing. And in this series of somewhat related cases, as you pointed out, you are going to hear over and over from the government attorneys that COVID changed everything. And in fact, the last time I was at this podium, I, I know, and we're, we, we, we've, we've been through, you know, we lived through it, too. So we understand what's going on. And it just, it didn't amend the Constitution. I, thank you, Your Honor. I totally agree with you. Okay, I'll reserve the balance of my time unless you have further questions. Thank you. Good morning, Your Honors. May it please the Court. I'm Andrew Hughes on behalf of the appellees here. With me at council table is Christina Sepe. Can you start with the mootness issue? You read my mind, Your Honor. So appellants sought to enjoin on a facial basis, the governor's proclamation, Proclamation 2114. The district court first denied their request for a TRO, denied their PI motion, and then dismissed their complaint on every ground. In the meantime, while this appeal was pending, Governor Inslee rescinded Washington's COVID-19 emergency declaration. I agree that it's not in place, but there's the voluntary cessation exception, as you know, to mootness. Correct, Your Honor. Help me understand why that wouldn't apply here. It seems right up. I mean, there's no, there's no restriction on him entering it again. And in fact, in a lot of places, we have COVID rearing its ugly head again, and we have restrictions coming into place. So there's nothing that would prohibit the governor from entering the same thing tomorrow. Correct? So the very short answer to that question, Your Honor, is that Brock versus Newsom and Brock was different. Brock was very different. Brock, you actually had a statute that was passed. You don't have that here. You have one man signs a document. One man rescinds a document. One man can resign the document. There's no there's no procedure in place that you have to run run through. So, Your Honor, I'd like to point you in particular to the dissent in Brock, because in Brock, the dissenting judges pointed to COVID case law from other circuits and concluded that a crucial factor, here I'm quoting, a crucial factor in determining mootness in this scenario is whether the defendant retains the power to issue similar orders. And here, the governor has withdrawn the emergency proclamation. But he still retains the power. I mean, this sort of goes to their claim that that he exceeded his authority in the first place. I mean, there doesn't seem to be much of a check on the governor's authority here. If he says there's an emergency, it seems like there's an emergency. So, Your Honor, Brock, again, addressed this exact question. And there, the court, the en banc panel held, and here, if I can quote again, that the mere power to reenact a challenged policy is not a sufficient basis on which a court can conclude that a reasonable expectation of recurrence exists. Rather, there must be evidence indicating that the challenged policy likely will be reenacted. And that's at 38F414. Can we move to, I think I have your argument on the mootness point well in hand. Can we move to the issue of, and let me start it by asking this question. Is your opposing counsel correct that once an exemption is granted, it doesn't mean the person can return to work, indeed, they can be dismissed? That is the case, Your Honor. And I want to start again. I have a series of questions. You can go through them as you wish. To the state's knowledge, have any of the individual plaintiffs been reinstated? If Your Honor's will permit me to go outside the record, yes. Mr. Pills, for example, the named plaintiff. If I go into my work email contacts, I can email him. He apparently still works at DCYF. So the first question here that I mean, because what I was struck by was that, you know, 90 years, you heard the stats, which I don't think you I mean, I think they were in your brief or a declaration that 95% of the religious exemption sought were granted. Now what we're hearing is that was all a sham because they were still dismissed. Help me understand that. So the key point to start with here, Your Honor, is that plaintiffs are bringing a facial challenge to the proclamation of the proclamation, which, just to reiterate, was rescinded almost a year ago. So they need to show that the proclamation on its face infringed free exercise rights and for strict scrutiny to apply. They need to show that the proclamation on its face. You think there are deficiencies that they didn't bring in as applied challenge? Well, yes and no, Your Honor. I say yes, because in this claim, the facial nature of their challenge is dispositive, right? Because on the facial claim, you can only look at the four corners of the document. We can't even get we can't even get into the stats. I mean, your theory would be even if we denied all the exemptions from the out of the gate, that wouldn't matter because the fact that if they're bringing a facial challenge, the fact that there's a system in place. But that gets back to his argument that if there's too much discretion granted on the face of it, that in and of itself could subject it to strict scrutiny. You agree with that principle, correct? I agree with that principle. I don't agree. That's what happened here, though. So, you know, as this court has held, the mere existence of an exemption that affords some minimal government discretion does not destroy a law's general applicability. That's the Stormins v. of discretion that was being exercised. Your point is we can't get into that question because they only raised a facial challenge. So, no, your honor, there was no discretion on the face of the proclamation on the face. Right. I understand that. But but you're saying we can't consider what happened after the fact to the seven hundred and whatever the number was, 700 plus exemption requests. We can't consider that because that because we're limited to the face of the document. With respect to this claim, yes, your honor, and I'd point your honor to let me back up and say again, as your honors know, the burden of a facial challenge is to show there are no circumstances in which Proclamation 2114 may be constitutionally implied. I see you nodding your head. Got to get it out anyways. So plaintiffs, in fact, concede in their reply at footnote 11 that at least two very large state agencies, the Department of Agriculture and the Health Care Authority granted accommodations for everyone. So even under their reading of the First Amendment, it is, in fact, possible to apply this proclamation constitutionally. And it's the rational basis. Or on the one hand, allowing an exemption and on the other hand, dismissing an employee. Well, this is not an issue that's been briefed, so I'm a little flying by the seat of my pants a little bit here, but the rational basis would be that it is well established under federal accommodation case law that an employer is not required to accommodate if doing so imposes an undue hardship. How about working from home? There are many cases in which that can't be the case, and this gets to exactly the problem. A hundred of them? This gets exactly, your honor, to the problem we have here, is that plaintiffs are bringing a facial challenge. A hundred very disparately, very separately situated employees. Only about two thirds of them are even state employees. I get it for your facial argument. I get it. We'll hear in rebuttal a response to that. But to Judge Hawkins' point, I mean, this does seem like a sham. And if the only problem here is that they didn't bring an as-applied challenge, because it seems to me, based on what I'm hearing, you haven't given me any reason to think that an as-applied challenge wouldn't at least have some legs. I mean, it seems like this was a sham. I don't understand what the state was doing. So, your honor, many of these plaintiffs are, in fact, bringing as-applied challenges, as plaintiffs concede at footnote one of their brief. I thought you said there weren't as-applied challenges. In separate cases, your honor. There's lots of these cases percolating through, and we are responding to... Wait, the same plaintiff is bringing... Now you've baffled me. The same plaintiff is bringing a facial challenge in this case and an as-applied challenge in a different case? I didn't even think you could do that. Now, just through the law, your honor, in at least one case, Scott Millenbach, one of the plaintiffs in this case, is the named plaintiff in an as-applied challenge that other folks in my office are currently handling. But we don't have as-applied challenges paired with the facial challenge in the case before us. Not in this case, your honor. That's absolutely correct. I want to go back to one question about mootness, which is... His one response to mootness was that the claim for the equitable relief of reinstatement is not mooted by the repeal of the order, even if, under Brock, it can't go back into effect. What's your response to that point? So, the first response, your honor, is that they do not, in fact, seek reinstatement. If you look at their complaint at 6 ER 1104, is their relief requested, they seek a declaration that the proclamation is invalid. They seek injunctive relief against the enforcement of the proclamation, and they seek monetary damages, which, as your honor previously indicated, are barred by the 11th Amendment. So, doesn't that depend on whether these are official or personal capacity suits? As a legal matter, yeah. I don't think there's any dispute, any meaningful dispute about that here. Plaintiffs haven't raised any colorable argument that these were anything but official acts. Well, but you can still be sued. I mean, Hafer versus Melo, you can be sued in a personal capacity suit for your official acts and have monetary liability, subject to qualified immunity, of course, but that's a viable claim. I assume the complaint here would be construed as asserting both of those. I don't know any reason why that would be, your honor. There's no, you're absolutely right on the law, of course, but there's simply no argument that has been raised here that these are anything but unofficial capacity suits. That's how they've been construed throughout the life of this litigation, and I don't see any argument in plaintiff's briefing for why this should be construed. I see I'm running out of... If they requested damages, I mean, the logical thing would be to construe that as a personal capacity suit because the damages aren't available, and I'm trying to give a reasonable construction of the complaint. If I see the damages claim, I assume it's attached to a theory that has damages, which is personal capacity. I mean, I understand the impulse there, your honor, but were that the case, the 11th Amendment wouldn't have a whole lot of legs. But suppose we construe the complaint as... I just want to make sure I understand all alternatives in your argument. Suppose we were to construe the complaint as including a claim for the equitable relief of reinstatement, would you still say that that was moot, or would you concede that is not moot and has to be dealt with on other grounds? I would still say that's moot, and I will explain why. I note that I'm at the end of my time, so I'm going to try and keep it crisp. I know, but you can answer our questions. Of course, of course, your honor. So the shortest answer I can give you is that reinstatement here would be individualized relief that's not appropriate for a facial challenge. And you can see this, your honors, most obviously. Well, yeah, but that doesn't address the mootness question, it seems to me. I mean, that addresses whether it could be done... You concede that it's not moot is what I'm taking. No, your honor, I don't, because... The response you just gave wasn't a mootness argument. That's Judge Nelson's point. Well, your honor, respectfully, I think it is a mootness argument because the relief of reinstatement, which, again, they don't seek, is simply inconsistent with the challenge that they're bringing in this claim. So they have 100 plaintiffs, right? Only two-thirds of those are even state employees, right? Their employers are not before this court. So there is no reinstatement that can be ordered with respect to those plaintiffs. But that seems like a merits-based determination at some point. Well, I mean, I guess I would say that at some level, you know, the mootness analysis and the merits analysis do dovetail. There's some relation. I get it. Right. And, you know, my point would simply be that in this case, if you look at what they're actually alleging, if you look at what Mr. Arnold was saying about how... But I think I'm right on this. It's your burden, right, to show that this is completely moot. And so, you know, if you're just throwing out and saying, hey, the vast majority... I mean, don't we have to go one by one through all of them  Well, I think the point is, your honor, that that's not something that makes sense or is appropriate for a facial challenge. And that's what Judge Rothstein held below, that this was not an appropriate mechanism. You can't bring 100 disparate challenges in a single lawsuit, right? If there's no further questions, your honor, I would respectfully request that the court dismiss this appeal as moot or in the alternative, affirm the district court's ruling on the merits. OK. Thank you so much. Thank you, your honor, and I'm sure I won't go slowly. Do you agree that this is only a facial challenge? I wanted to give a little history, your honor. The reason that we... I know there's always so much to tell us. You've got 39 days. Is this a facial challenge or an as-applied challenge? Judge Rothstein held that this was a facial challenge. Do you believe it's an as-applied challenge? I believe that I initially brought it as both. Is that on appeal? Is that issue up before us? I didn't see that brief. I don't believe we assigned error to that decision by Judge Rothstein. That's a problem. Understood, your honor. On the mootness question, we did seek injunctive relief to keep my clients in their jobs on the front end. That is obviously analogous. You agree that's moot? Well, certainly because they were fired, of course. Well, but also you agree that injunctive relief in general... Well, maybe you don't agree with that. Not the reinstatement, your honor. Which is the analogous... Which is the analogue to seeking them not being fired in the first place is them getting reinstated now if their rights are... What about the personal capacity versus official? I didn't understand that to be so clear that this was just an official capacity suit. Maybe I missed that. Do you agree with that? Your honor, it wasn't. As your honor pointed out, we did seek damages. I would also like to point out the defendants in this case are not just the governor. I would concede to counsel's point that those healthcare workers whose employers were not joined in the suit, they could not be ordered reinstated. I will concede that point. But the heads of the agencies who are defendants here, they could be ordered to reinstate those clients. I'd also like to point out that Zachary Pills specifically came up. My belief, very quickly checking my email just now, is he does still work for DCYF, but he was demoted. So he received adverse... He may still have... He received adverse employment action because of his religious beliefs. Okay. And your honor, there's a fundamental... We focused on a different area than... I understand the problem. I'm deeply troubled by this allegation that this was a sham exemption. I think you've got some legs here, but you understand the difficulty we have where this is only a facial challenge and not an as-applied challenge. And we addressed that in the briefing, your honor. The lack of guidance from the governor and some of the other issues that are in our brief, we do address that. Okay. And the fundamental question of the area we didn't talk about, and that is the governor's authority. There has to be some limit. Under our system, there's some limit. Governor Inslee declared a climate emergency on January 31, 2020. Are you raising that as a state law issue? He's exceeded his authority in terms of the distribution of powers within the Washington Constitution and the Washington system? Among other things, your honor. Yes. That's just barred by Pennhurst. I mean, we can't be enjoining state officials based on state grounds. That's what Pennhurst holds. Well, your honor, this court can enjoin state officials on many of the other grounds that we have addressed in our pleadings, however. Right, but not on state grounds. That's the question. I mean, the point is you're not saying that there's a violation of federal law by him exceeding his authority, or are you? No, your honor. I'd want to look back at my brief, but I believe that's correct, your honor. I construed that as a state law ground, and the state came back and said it violates Pennhurst, and that seems to be correct, unless you can point to me something that would respond to that point, but I didn't see it. If it's not in our briefing, I won't have it today, your honor. All right. Counsel, thank you. Thank you, your honor. Thank you both for your arguments in this case. And the case is now submitted. We'll move on.
judges: HAWKINS, NELSON, COLLINS